# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

MICHAEL J. LILLIE,

                      Plaintiff,

      v.                                           7:16-CV-537
                                                     (FJS/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

---

LAWRENCE D. HASSELER, ESQ., for Plaintiff
ANDREEA L. LECHLEITNER, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

      This matter was referred to me, for report and recommendation to the Honorable Frederick J. Scullin, Senior United States District Judge, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, in accordance with the provisions of 28 U.S.C. § 636(b) and N.D.N.Y. Local Rule 72.3(d). (Dkt. No. 3).

## I.   **PROCEDURAL HISTORY**

      Plaintiff protectively filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") Benefits on February 19, 2009, alleging disability beginning February 1, 2009. (Administrative Transcript ("T") at 143-48, 535). The applications were denied initially on April 29, 2009, and plaintiff made a timely request for a hearing before an Administrative Law Judge ("ALJ"). (T. 89-106, 110-14). The hearing, at which plaintiff and his independent living skills training clinician testified, was conducted by ALJ Robert E. Gale on July 14, 2010. (T. 44-88).

In a decision dated November 2, 2010, the ALJ found that plaintiff was not disabled. (T. 23-43).  The Appeals Council denied plaintiff's request for review on May 11, 2012. (T. 1-3).  On May 25, 2012, plaintiff commenced an action challenging the decision in the Northern District of New York, Case No. 7:12-CV-862 (LEK). (T. 618-33).  In a Memorandum-Decision and Order dated March 31, 2014, the Honorable Lawrence E. Kahn ordered that the Commissioner's decision be vacated, and remanded the case for redetermination of plaintiff's residual functional capacity ("RFC") and reconsideration of whether there was other gainful work in the national economy that plaintiff could perform. (T. 631-33).

On September 9, 2014, the Appeals Council vacated the November 2, 2010 ALJ decision and remanded the case for further proceedings. (T. 634-36).  On April 11, 2013, ALJ Gale held a supplemental hearing at which plaintiff and vocational expert ("VE") Linda N. Vause testified. (T. 559-89).  At the hearing, plaintiff amended the alleged onset date to June 20, 2009. (T. 562).  He also advised the ALJ that he had returned to full-time employment on February 28, 2011. (T. 536, 579, 882-83).  On December 23, 2015, the ALJ  issued a decision finding that plaintiff was not disabled for the closed period between June 20, 2009 and March 1, 2011. (T. 532-558).  This decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on April 27, 2016. (T. 523-27).

## II.    GENERALLY APPLICABLE LAW

### A.    Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI

disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . .  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520,

3

416.920.  The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision.  *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision.  *Id*.  *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence

4

in the record.  *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles*

*v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ

explicitly to reconcile every conflicting shred of medical testimony).  However, the ALJ

cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz*

*v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No.

09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   FACTS

At the amended alleged onset date, plaintiff was 33 years old. (T. 143).  During

the closed period, he resided with his wife and two young daughters. (T. 566).  Plaintiff

attended high school up to the eleventh grade in special education classes, and he

subsequently obtained a general equivalency diploma ("GED"). (T. 394, 424).  His

previous employment included work as a mover, kitchen helper, and restaurant cook.

(T. 57-61, 188).  In June 2009, plaintiff had been working as maintenance employee at

a golf course. (T. 52-56, 467).  He left this position after being injured in a fall at work.[1]

(T. 55-56).  Plaintiff returned to full-time employment at a restaurant on February 28,

2011. (T. 579, 882-83).

Plaintiff was involved in a serious car accident in 2001, during which he was

ejected from the vehicle. (T. 360-61, 425, 434).  He was diagnosed with a traumatic

brain injury that impaired his cognitive functions, including his memory. (T. 262-64,

360-61, 395).  He reported persistent headaches and dizziness after the accident, but

---

[1] Plaintiff reached a workers' compensation settlement with his employer for his injuries.
(T. 579-80).

was able to return to work. (T. 394, 434, 579).  Plaintiff injured his lower back while at work in 2005 or 2006. (T. 434).  At his 2009 consultative examination, plaintiff reported lingering lower back pain that was aggravated by standing for long periods, bending, lifting heavy objects, and climbing stairs. (*Id.*).  Plaintiff, who had a history of substance abuse, had taken a variety of prescription pain medication for his back and head injuries. (T. 434, 575, 1064).  At his consultative examination, plaintiff reported that, as of April 2009, he was only using ibuprofen for pain relief. (T. 434, 476-80).

On June 10, 2009, plaintiff fell off a ladder at work, struck his head, and briefly lost consciousness. (T. 467, 665-66, 1007).  He suffered a concussion, but his treating physicians considered this a "relatively milder traumatic brain injury" in comparison to his 2001 automobile accident. (T. 469, 1007, 1065).  Plaintiff reported an increase in frequency and severity of his headaches and dizziness since this workplace injury. (T. 467, 1065).

The ALJ's December 23, 2015 decision provides a detailed statement of the medical and other evidence of record.  (T. 538-49).  Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.    THE ALJ'S DECEMBER 23, 2015 DECISION

The ALJ determined that plaintiff met the insured status requirements through December 31, 2017, and that plaintiff had not engaged in substantial gainful activity during the relevant period of June 20, 2009 through March 1, 2011. (T. 538).  The ALJ found that plaintiff had the following severe impairments during that period at step two

6

of the sequential evaluation: low back pain, traumatic brain injury, and depression. (T. 538-39).  At the third step, the ALJ determined that plaintiff's impairments during the relevant period did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 539-42).

The ALJ found at step four of the analysis that plaintiff had the RFC to perform less than the full range of light work. (T. 542-49).  Specifically, plaintiff could not climb ladders, ropes, or scaffolds; could only occasionally bend, squat, crawl, crouch, kneel, and stoop; had to avoid concentrated exposure to noise over 75 decibels; and had to avoid work at unprotected heights. (T. 542).  The ALJ also found that plaintiff could remember and carry out simple instructions; could make judgments commensurate with the functions of unskilled work; and could respond appropriately to supervisors, co-workers, and usual work situations. (*Id.*).

In making the RFC determination, the ALJ stated that he considered all of the plaintiff's symptoms, and considered the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929" and Social Security Rulings ("SSRs") 96-4p and 96-7p.  (*Id.*).  Finally, the ALJ stated that he considered opinion evidence pursuant to 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (*Id.*).

The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were only

partially credible in light of the record evidence. (T. 544-45). The ALJ next determined that plaintiff was not able to perform any of his past relevant work during the closed period. (T. 549). Relying on the VE testimony, the ALJ found that plaintiff was able to perform jobs such as cleaner and polisher, assembler, and routing clerk during the closed period, all of which were classified as unskilled light work. (T. 549-50, 582-84). Accordingly, the ALJ determined that plaintiff was not disabled during the closed period of June 20, 2009 through March 1, 2011. (T. 550).

V.    **ISSUES IN CONTENTION**

Plaintiff raises the following arguments:

1.    The ALJ's RFC assessment was not supported by substantial evidence due to the ALJ's failure to properly evaluate the medical opinions and other evidence. (Pl.'s Br. at 11-14) (Dkt. No. 12).

2.    The ALJ failed to follow the District Court's March 31, 2014 Memorandum-Decision & Order and the Appeals Council's September 9, 2014 remand order. (Pl.'s Br. at 12-14).

Defendant argues that the Commissioner's determination is supported by substantial evidence, consistent with the remand orders, and should be affirmed. (Def.'s Br. at 4-21) (Dkt. No. 13). For the following reasons, this court agrees with the defendant and will recommend dismissing the complaint.

## DISCUSSION

VI.    **RFC EVALUATION/TREATING PHYSICIAN**

    A.    **Legal Standards**

       1.    **RFC**

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical

facts, and non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

### 2. Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the reasons that a report of a treating physician is rejected. *Halloran v. Barnhart*, 362 F.3d at 32-33. An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

When controlling weight is not given to a treating physician's opinion, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) frequency of the examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. *See* 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

### B. Application

It is the province of the ALJ to resolve genuine conflicts in the record. *Veino v.*

*Barnhart*, 312 F.3d at 588.  However, the Commissioner need not "reconcile explicitly every shred of medical testimony." *Galiotti v. Astrue*, 266 F. App'x 66, 66 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)).  Here, the ALJ resolved conflicts between the various medical opinions by assigning the greatest weight to those opinions that he deemed most consistent with plaintiff's overall treatment record and activities.  In doing so, the ALJ appropriately evaluated the conflicting medical evidence, and made an RFC finding that was consistent with the overall record.  *See Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole).  In light of the ALJ's detailed analysis of plaintiff's medical history, the relevant medical opinions, and plaintiff's activities of daily living, this court concludes that his RFC determination was supported by substantial evidence, as summarized below.

### 1. Physical Limitations

Plaintiff contends that the ALJ did not properly weigh the medical opinion evidence, in particular the opinion of plaintiff's primary treating physician, Dr. Shara Peets, and thus erred in finding that plaintiff was capable of performing light work. (Pl.'s Br. at 12-14).  This court disagrees, and concludes that the ALJ's RFC assessment of plaintiff's physical impairments was supported by substantial evidence.

Dr. Peets evaluated plaintiff after his June 10, 2009 workplace fall. (T. 476-95). In light of plaintiff's reported persistent headaches and dizziness, Dr. Peets opined that

plaintiff was unable to return to his previous occupation because it required him to climb stairs and perform other tasks that created a risk of falling and re-injuring himself. (T. 473, 485). The ALJ assigned this specific opinion "some weight," and incorporated it into the RFC determination, by restricting plaintiff from work that required climbing ladders, ropes, or scaffolds, and work performed at unprotected heights. (T. 542, 546). Although not bound by Dr. Peet's conclusion that plaintiff was "totally disabled," the ALJ agreed with the treating physician's conclusion that plaintiff was unable to perform his prior work. (T. 473, 485, 549).

Besides an increased danger of falling or losing his balance, Dr. Peets did not identify any other functional limitations arising from plaintiff's impairments. (T. 546). Plaintiff does not identify any such findings that the ALJ overlooked, or any specific portion of the Dr. Peets' opinion that should have been assigned more weight. Instead, plaintiff argues that the ALJ did not adequately address the factors set forth in the treating physician rule when considering Dr. Peets' opinion. (Pl.'s Br. at 12). This court disagrees. The ALJ referenced plaintiff's treatment history with Dr. Peets, and found that she only prescribed conservative treatment for his dizziness and headaches. (T. 476-96, 545). The ALJ also considered Dr. Peets's refusal of plaintiff's repeated requests for stronger pain medication to treat his headaches and back pain, and the treating physician's remarks that narcotic pain medication was unwarranted by plaintiff's condition. (T. 476, 478, 545). Finally, the ALJ considered the limited findings in Dr. Peets's treatment notes, and compared them to the more detailed reports offered by the consultative examiner. (T. 546). While the ALJ may not have explicitly

referenced each factor of the treating physician rule in his determination, this court

concludes that the ALJ applied the substance of that rule in his analysis of Dr. Peets's

opinion. *Halloran*, 362 F.2d at 33.

In reaching his RFC determination regarding plaintiff's physical limitations, the

ALJ gave "great weight" to the opinion of Dr. Justine Magurno, who performed a

consultative examination of plaintiff on April 10, 2009. (T. 434-39). At the

examination, plaintiff complained of lower back pain that was aggravated by standing a

long time, bending, lifting heavy objects, and climbing stairs. (T. 434). Plaintiff also

described his 2001 traumatic brain injury, that caused him headaches that lasted several

hours. (*Id.*). Plaintiff reported that his headaches improved with the use of ibruprofen.

(*Id.*).

During Dr. Magurno's examination, plaintiff did not appear in acute distress, and

demonstrated a normal gait. (T. 435). Plaintiff could walk on heels and toes without

difficulty, and was able to perform a full squat. (*Id.*). He did not require any assistive

devices, did not need help changing for the examination, and required no assistance

getting on or off the examination table. (*Id.*). His cervical spine had full flexion,

extension, and rotary movement. (*Id.*). His lumbar spine flexion was limited to 70

degrees. (*Id.*). He showed full range of motion in his shoulders, elbows, forearms, hips,

knees, and ankles bilaterally. (*Id.*). Plaintiff's hand and finger dexterity were intact, and

he exhibited full grip strength in both hands. (T. 437). After the examination, Dr.

Magurno reviewed an x-ray of plaintiff's lumbosacral spine. (T. 437, 439). This

showed a transitional L5 vertebral body and spina bifida occulta[2] at the L-5 vertebrae. (T. 439).

Dr. Magurno opined that plaintiff had moderate limitations for lifting, carrying, and repetitive bending; and mild limitations for walking and standing. (T. 437). She found no limitations for reaching, pushing, pulling, fine motor activities, speech, hearing, squatting, or sitting. (*Id*.). She reported plaintiff's prognosis as "stable." (*Id*.). The ALJ concluded that these findings were consistent with the evidence as a whole, including plaintiff's medical records that post-dated the consultative examination. (T. 546).

In particular, the ALJ found no significant differences from the objective clinical and laboratory findings associated with plaintiff's June 2009 workplace injury. (*Id*). For example, Dr. Patrick Hughes examined plaintiff on August 28, 2009 as part of plaintiff's workers' compensation claim. (T. 546, 1004-1014). The ALJ assigned "moderate evidentiary weight" to Dr. Hughes's opinion that plaintiff could not stand or walk for more than sixty minutes at a time; could not drive for more than forty minutes at a time; could not work above ground level; and could not lift more than twenty pounds due to his headaches and dizziness. (T. 546, 1007). The ALJ also reviewed the other medical records associated with plaintiff's workers' compensation application, but found no relevant information that would contradict Dr. Magurno's findings. (T.

---

[2] Spina bifida occulta is a small separation or gap in one or more of the spinal vertebrae. Because the condition does not involve the spinal nerves, this mildest form of spina bifida generally causes no signs or symptoms.  http://www.mayoclinic.org/diseases-conditions/spina-bifida/basics/symptoms/con-20035356

546-47, 1015-1086).

Accordingly, the ALJ explained his reliance upon Dr. Magurno's consultative opinion and supporting medical evidence in determining that plaintiff could perform less than the full range of light work. The ALJ also explained his rationale for assigning less than controlling weight to Dr. Peets's treating physician opinion, and the ALJ's basis for including certain limitations related to climbing and unprotected heights in the RFC. Therefore, this court finds that the ALJ's physical RFC determination was supported by substantial evidence.

### 2.    Mental Limitations

As described above, the ALJ's RFC determination limited plaintiff to simple tasks and unskilled work. (T. 542). Plaintiff argues that the ALJ did not properly weigh the medical evidence regarding plaintiff's mental impairments, and failed to apply the treating physician rule. (Pl.'s Br. at 12-14). This court disagrees, and concludes that the ALJ's assessment of plaintiff's mental impairments was supported by substantial evidence.

The ALJ gave "great weight" to the April 10, 2009 opinion of Dr. Jeanne A. Shapiro, who performed a consultative psychiatric examination. (T. 424-28, 547). Dr. Shapiro opined that plaintiff could follow and understand simple directions and instructions, and was capable of performing simple and complex tasks with supervision and independently. (T. 427). In Dr. Shapiro's opinion, plaintiff was capable of performing many work tasks with adequate training, despite "functioning in the mild range of mental retardation." (*Id*.). She found that plaintiff was capable of maintaining

15

attention and concentration, could regularly attend to a routine, and could maintain a schedule. (*Id*.).  Plaintiff also appeared able to make some appropriate decisions, relate to and interact appropriately with others, and deal adequately with stress. (*Id*.).

During the consultative examination, Dr. Shapiro observed that plaintiff appeared relaxed and comfortable, and displayed a calm mood. (T. 426).  He was cooperative and responsive to questions, and demonstrated an adequate manner of relating, social skills, and overall presentation. (*Id*.).  He showed intact attention and concentration, and was able to do counting, simple calculations, and serial 3 exercises.  (*Id*.).  Plaintiff also demonstrated intact recent and remote memory skills. (*Id*.).  He was able to recall three objects immediately and after two minutes, and could restate five digits forward and four digits backward. (*Id*.).  Plaintiff's intellectual functioning was "in the deficient range," but he reported that he was able to dress, bathe, and groom himself; cook and prepare food; do general cleaning and laundry; shop; drive; and take public transportation. (T. 427).

Although Dr. Shapiro issued her opinion prior to plaintiff's second head injury, the ALJ cited subsequent treatment notes from the closed period that were consistent with the consultative examination findings. (T. 547).  Dr. Abdul Latif, a neurologist, examined plaintiff on February 22, 2010 and found that plaintiff had intact recent and distant memory. (T. 475).  Dr. Latif also reviewed plaintiff's July 16, 2009 MRI and did not find any brain abnormalities. (T. 474-75).  The ALJ also reviewed the progress notes from plaintiff's psychiatrist, Dr. Michael Camillo, and his counselor, Joyce Combs, from 2009 and 2010. (T. 547).  These records did not show any deterioration in

16

plaintiff's mental health since Dr. Shapiro's consultative examination. (T. 497-513, 547).

Plaintiff argues that the ALJ should have assigned controlling weight to the opinion of Dr. Lei Lu, who performed a neuropsychological evaluation[3] of plaintiff on June 16, 2009, shortly after plaintiff's workplace fall. (T. 467-69).  Dr. Lu had previously examined plaintiff on August 22, 2007, and had diagnosed him with "impairments in multiple cognitive domains, including visuospatial skills, learning and memory, as well as in cognitive flexibility and problem-solving." (T. 467).  Plaintiff exhibited average intellectual functioning and verbal memory skills, as well as normal, "low average" attention and concentration, but showed "severely impaired" visual memory skills. (T. 468).

In her June 2009 opinion, Dr. Lu opined that plaintiff showed improvement in cognitive flexibility and problem-solving skills in comparison with his August 2007 evaluation, but continued to show severe impairments in visuospatial perception and construction skills, visual learning, and memory. (T. 469).  Dr. Lu concluded that these impairments most likely resulted from plaintiff's 2001 brain injury, but could be further compromised by plaintiff's "history of substance abuse, recent mild traumatic brain injury, and current severe depression." (*Id*.).  She recommended that a brain MRI be

---

[3] A neuropsychological evaluation is an assessment of an individual's brain functions, based upon interviews with the patient and a series of cognitive tests.  https://www.med.unc.edu/ neurology/divisions/ movement-disorders/npsycheval

performed to rule out any structural abnormalities.[4] (*Id.*).  Dr. Lu opined that plaintiff's impairments were "sufficient to interfere with his daily functioning and to render him at least partially occupationally disabled." (T. 469).

The ALJ found that Dr. Lu was not a treating source because she had evaluated plaintiff on only one or two occasions.[5] (T. 548).  This was error.  Given the specialized nature of plaintiff's treatment with Dr. Lu, the ALJ was required to consider whether Dr. Lu had a "ongoing treatment relationship" with plaintiff that had a nature and frequency typical for plaintiff's condition.  *See Patterson v. Astrue*, No. 5:11-CV-1143 (MAD/DEP), 2013 WL 638617, at *8 (N.D.N.Y. Jan. 24, 2013) (citing 20 C.F.R. §§ 404.1502, 416.902).  The ALJ did not assess these factors.  Because the record shows regular evaluation and follow-up for specialized cognitive testing, the ALJ should have considered Dr. Lu a treating physician.  However, this court concludes that such error was harmless, in light of the ALJ's subsequent evaluation of the record evidence, including Dr. Lu's treatment notes, the consultative examiner's opinion, and plaintiff's supplemental hearing testimony.  *See Mongeur*, 722 F.2d at 1039 (". . . even if we were to accept [plaintiff's] classification of them as treating physicians, we would, nevertheless, conclude that the ALJ properly weighed the conflicting medical evidence.").

_____

[4] This MRI was performed on July 16, 2009.  The MRI results showed sinusitis, but no brain abnormalities. (T. 470).

[5] Dr. Lu's June 16, 2009 report references a prior evaluation of plaintiff that she performed "10 months ago," which would have taken place in August 2008. (T. 467).  Although there is no report from this evaluation in the record, this reference suggests that Dr. Lu had examined plaintiff on three occasions.

18

For example, the ALJ cited Dr. Lu's clinical finding that plaintiff's cognitive functioning actually showed improvements in some areas, even though the evaluation occurred shortly after plaintiff suffered his second head injury. (T. 469, 547). Although plaintiff had a restricted affect, Dr. Lu described him as pleasant and cooperative during the evaluation and found that plaintiff "appeared to make his best efforts" on the cognitive tests. (T. 468). He was alert and oriented, and demonstrated normal receptive and expressive language. (*Id*.).

In addition, the ALJ found that Dr. Lu's opinion that plaintiff's mental impairments interfered with his daily functioning was inconsistent with the evidence regarding plaintiff's activities of daily living. (T. 548). In August 2007, after plaintiff had already experienced one traumatic brain injury, plaintiff told Dr. Lu that he had been working full-time as a restaurant cook, and enjoyed fishing and driving four-wheelers. (T. 394). At his June 16, 2009 evaluation, plaintiff informed Dr. Lu that his hobbies included taking walks and driving a four-wheeler. (T. 467). He had also recently obtained full custody of his two young daughters, and regularly took them to the playground. (*Id*.). He informed Dr. Lu that he still suffered memory problems, but denied any problems with driving, taking his medication, or cooking. (*Id*.).

The ALJ's consideration of Dr. Lu's opinion is supported by the additional testimony considered on remand. (T. 570-77). At his supplemental hearing, plaintiff testified that the most significant limitation during the closed period was his memory and ability to learn new tasks. (T. 570). He testified that, despite these limitations, he was able to learn new work tasks when allowed "hands-on" training, rather than reading

19

manuals or watching training videos. (T. 571). During the relevant time period, he had also completed parenting and anger management classes. (T. 576). Although he had not engaged in many hobbies during the closed period, plaintiff testified that this was partially due to the time commitment required to take care of his daughter, who was hospitalized most of that time. (T. 571).

Plaintiff also argues that Dr. Lu's opinion was consistent with the June 4, 2007 psychiatric opinion by Dr. Thomas E. Knudsen, and the October 1, 2007 report of Dr. Maritza Santana-Garcia. (Pl.'s Br. at 13). However, the ALJ assigned Dr. Knudsen's opinion "no weight" because it occurred almost two years prior to the amended onset date. (T. 549). Plaintiff had been referred to Dr. Santana-Garcia for a single psychiatric evaluation while in rehabilitation for drug and alcohol abuse. (T. 269). The ALJ referenced Dr. Santana-Garcia's report as part of plaintiff's medical history, but found that the overall record did not show that plaintiff's history of polysubstance abuse had affected his ability to function during the period under review. (T. 539, 543). Plaintiff has not offered any justification to disturb the ALJ's finding that these reports from 2007 were inapplicable to the closed period of June 20, 2009 to March 1, 2011.

Dr. Lu described plaintiff as "at least partially occupationally disabled," but a conclusory statement of disability is not binding on the ALJ if that opinion is inconsistent with substantial evidence in the record. *Michels v. Astrue*, 297 F. App'x 74, 76 (2d Cir. 2008) (citing *inter alia Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *Veino*, 312 F.3d at 588. *See* 20 C.F.R. § 404.1527(e)(1) (a statement by a medical source that a claimant is "disabled" does not mean that the Commissioner will

20

make that determination).  The term "disabled" is a legal, not a medical definition. *Id.*

Accordingly, the ALJ applied the substance of the treating physician rule in his evaluation of Dr. Lu's opinion, and relied on medical and testimonial evidence in his evaluation of the weight that should be assigned to it.  *See Camille v. Colvin,* 652 F. App'x 25, 28 (2d Cir. 2016) (ALJ satisfied the substance of the treating physician rule by evaluating treatment notes, daily activity reports, and credible testimony).  Based on that analysis, the court is able to discern the ALJ's reasoning, even if the ALJ only stated that Dr. Lu's opinion "was not entitled to controlling weight," and did not specify how much he had discounted Dr. Lu's opinion. *Curtis v. Colvin*, No. 11-CV-1001, 2013 WL 3327957, at *5 (N.D.N.Y. July 2, 2013) ("despite the lack of specific weight assigned to the opinions, the court is able to discern with ease the ALJ's reasoning, and his treatment of that evidence will not be disturbed.").  Based on the analysis above, this court finds that the ALJ's mental RFC determination was supported by substantial evidence.

## VII.  STEP FIVE DETERMINATION

Plaintiff did not raise any direct challenge to the ALJ's reliance upon the VE testimony, so the court will only briefly address the issue.  One of the ALJ's hypothetical questions to the VE mirrored his RFC determination. (T. 582-85)  Because this court has found that the ALJ's RFC determination was supported by substantial evidence, it also finds that the ALJ's determination at step five, and the ultimate

determination of disability, were similarly supported by substantial evidence.[6]

## VIII. <u>ALJ's COMPLIANCE WITH REMAND ORDERS</u>

### A.    Legal Standards

"The law of the case doctrine, while not binding, counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (citation and internal quotation marks omitted.).  "ALJs have acknowledged throughout the years that the remand instructions they receive from the federal district court are the law of the case." *Gladle v. Astrue*, No. 12-CV-0284, 2013 WL 4543147, at *3 (N.D.N.Y. 2013) (quoting *Thompson v. Astrue*, 583 F. Supp. 2d 472, 475 (S.D.N.Y. 2008)).  "Similarly, the Commissioner is implicitly limited by any findings of the district court regarding the application for disability benefits." *Id.*, 2013 WL 4543147, at *3.

The applicable SSA regulations provide that, upon remand, an ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order."  20 C.F.R. §§ 404.977(b), 416.1477(b).  Accordingly, reviewing courts have found that failure to comply with the Appeals Council's remand order may be grounds for remand.  *See*

---

[6] The ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect the plaintiff's limitations. *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009). Where the hypothetical is based on an ALJ's RFC analysis, which is supported by substantial facts, the hypothetical is proper. *Id.* at 276-277.

*Dommes v. Colvin*, No. 3:15-CV-977 (GTS), 2016 WL 7104900, at *4-5 (N.D.N.Y. Dec. 6, 2016) (remanding for calculation of benefits based on ALJ's failure to comply with District Court order and Appeals Council's remand order to follow treating physician rule); *Mortise v. Astrue*, 08-CV-0990, 713 F. Supp. 2d 111, 123-24 (N.D.N.Y. 2010) (remanding based on the ALJ's failure to comply with the Appeals Council's remand order to follow the treating physician rule); *Gorman v. Astrue*, 08-CV-0251, 2009 WL 4884469, at *10 (N.D.N.Y. Dec. 10, 2009) (ALJ's failure to comply with the Appeals Council's remand order was error worthy of remand).

However, where an issue is not "'precluded by remand order or the judgment of the court in the prior judicial review, that issue may be decided differently . . . on remand if the Commissioner applies the correct legal standard and substantial evidence in the record as a whole supports the decision.'" *Gusky v. Astrue*, 954 F. Supp. 2d 180, 190 (W.D.N.Y. 2013) (quoting *Thompson*, 583 F. Supp. 2d at 475 (quoting *Lucas v. Astrue*, No. 07-2143, 2008 WL 474286, at *4 (D. Kan. Jan. 29, 2008)). *See also Marvin v. Colvin*, No. 3:15-CV-74, 2016 WL 2968051, at *2 (N.D.N.Y. May 20, 2016) (in the absence of limiting instructions or court findings, the Commissioner may revisit on remand any issues relating to the application for benefits) (citing *Thompson*, 583 F. Supp. 2d at 475).

### B.    Application

In Judge Kahn's March 31, 2014 Memorandum-Decision and Order, the District Court vacated the Commissioner's decision and remanded the case for "redetermination of Plaintiff's RFC" and for the ALJ to "reconsider whether Plaintiff has significant

nonexertional impairments for the purposes of Step 5 analysis." (T. 631-633).  Based upon the available record, Judge Kahn identified a series of errors in the ALJ's November 2, 2010 decision, particularly in the application of the treating physician rule to Dr. Peet and Dr. Lu, and in the weight assigned to the consultative examiner opinions of Dr. Magurno and Dr. Shapiro. (T. 628-631).  On September 9, 2014, the Appeals Council remanded the case back to the ALJ for "further proceedings consistent with the order of the court." (T. 636).

Plaintiff contends that the ALJ ignored the remand instructions from the District Court and the Appeals Council. (Pl.'s Br. at 12-14).  To support this argument, plaintiff primarily relies upon the District Court's finding that "[t]he ALJ incorrectly assigned greater weight to the opinions of consultative examiners over the well-supported opinions of the treating physicians." (T. 629).  In plaintiff's view, the ALJ was bound by the District Court's order to assign the greatest weight to plaintiff's treating physicians, Dr. Peets and Dr. Lu.  This court disagrees, for several reasons.

First, although the District Court was highly critical of the ALJ's analysis of the record evidence, its order did not contain any limiting instructions that would restrict the scope of the ALJ's consideration of the record evidence on remand. (T. 631-633). In the absence of such limiting instructions, the ALJ was permitted to revisit any relevant issues relating to plaintiff's application.  *See Marvin*, 2016 WL 2968051, at *2 (citing *Thompson*, 583 F. Supp. 2d at 475).  Moreover, adoption of plaintiff's suggested approach would impermissibly expand the scope of the District Court's review of the ALJ's determination.  *See Valente v. Sec'y of Health & Human Servs*., 733 F.2d 1037,

24

1041 (2d Cir. 1984) (court may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.").

In addition, the ALJ's December 23, 2015 decision relies upon additional evidence that was not available to the District Court, in particular the evidence from the supplemental hearing. (T. 559-588). This included plaintiff's testimony that his memory deficits were his primary functional limitation during the period under review; that he was a "hands-on" learner who could still learn new tasks by being trained directly by another person; and that he was not abusing drugs or alcohol during the closed period under consideration. (T. 570-79). The ALJ incorporated all of this new information into his RFC determination. (T. 542-49). The ALJ also relied upon new VE testimony to reach his step five determination. (T. 549-50).

Furthermore, plaintiff's argument ignores the ALJ's efforts to address the errors identified in the March 31, 2014 Memorandum-Decision and Order. For example, the District Court found that the language in the ALJ's decision was unclear as to the amount of weight that was actually assigned to Dr. Peets's opinion.[7] (T. 40, 629). On remand, the ALJ removed this confusing language from his decision, and thus clarified that he assigned "some weight" to Dr. Peets's opinion that plaintiff could not perform work that involved climbing or the risk of falls. (T. 38, 546). The District Court also found that the ALJ misstated the record when he found that Dr. Peets had made "no

---

[7] The District Court noted that the ALJ stated that he had given some weight to Dr. Peets's opinion, but that the ALJ did not mention this opinion when he listed the evidence that formed the basis for his RFC determination. (T. 38, 40, 629).

worsening clinical findings in the [treatment] notes from 2007-2010." (T. 37, 630).  On remand, the ALJ reviewed the relevant notes, but concluded that they reflected conservative medical treatment despite plaintiff's reports of increasing headaches and back pain. (T. 543).

Although the ALJ repeated his error of finding that Dr. Lu was not a treating physician,[8] he corrected other errors identified by the District Court in his consideration of the treating specialist's opinion.  The District Court found that the ALJ did not have substantial evidence to conclude that Dr. Lu's opinion was unsupported by the record. (T. 629).  On remand, the ALJ relied upon plaintiff's supplemental testimony to demonstrate the inconsistencies between plaintiff's activities of daily living and Dr. Lu's opinion that plaintiff had significant functional limitations. (T. 544, 548).  The District Court had also found that the ALJ should have considered Dr. Knudsen's 2007 opinion and Dr. Santana-Garcia's 2007 evaluation when assigning weight to Dr. Lu's opinion. (T. 630).  On remand, the ALJ explained why these opinions were inapplicable to the amended period of alleged disability. (T. 539, 543, 549).

The ALJ also modified his analysis of the consultative examiner opinions to address deficiencies identified by the District Court.  The ALJ supplemented his evaluation of Dr. Magurno's 2009 opinion by comparing it to a 2010 opinion from Dr. Hughes. (T. 546, 1004-1014).  The ALJ also reviewed treatment notes prepared in connection with plaintiff's workers' compensation claim in 2009. (T. 546, 1015-1086).

---

[8] As explained above, this error was harmless in light of the ALJ's consideration of the medical evidence.

Finally, the ALJ revised his determination to avoid substituting his opinion for Dr.
Shapiro's diagnosis of mild mental retardation. (T. 30, 538, 630-31). Instead, the ALJ
focused on the functional limitations identified in Dr. Shapiro's consultative opinion,
and that opinion's consistency with the record as a whole. (T. 547-49). By making
these changes, the ALJ complied with the remand orders and issued a disability
determination that was supported by substantial evidence.

WHEREFORE, based on the findings above, it is

RECOMMENDED, that the Commissioner's decision be AFFIRMED, and
plaintiff's complaint be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file
written objections to the foregoing report. Such objections shall be filed with the Clerk
of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS
WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette*, 984 F.2d 85 (2d
Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d
Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:      April 4, 2017

Hon. Andrew T. Baxter
U.S. Magistrate Judge